IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**GREGORY J. TAYLOR,**

      **Petitioner,**

v.                                                                                **Case No. 1:13-cv-33391**

**WILLIAM JOHNSON, Warden,**
**FCI McDowell,**

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On December 27, 2013, Gregory Taylor (hereinafter "Taylor") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). On April 21, 2014, after Petitioner paid the filing fee, the undersigned issued a show cause order. (ECF No. 17). Respondent filed a response to the show cause order, and Taylor filed additional materials in support of his petition. (ECF Nos. 3, 18, 19, 20, 21). This case is assigned to the Honorable David A. Faber, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the District Court **DENY** Petitioner's Petition for a Writ of Habeas Corpus and **DISMISS** this action, with prejudice, from the docket of the Court.

**I.**      **Habeas Petition and Subsequent Filings**

Taylor filed his petition for habeas relief when he was an inmate at FCI

McDowell in the Southern District of West Virginia. Approximately eight months after filing the petition, Taylor was released to a Residential Reentry Center. Five months after that, Taylor was released from the custody of the Federal Bureau of Prisons ("BOP"). At present, Taylor presumably resides in Maryland and is completing three years of supervised release.

### A. Habeas Petition

In his petition, Taylor asked the Court to issue his "immediate release from federal corrections." (ECF No. 1 at 1). According to the petition, Taylor was incarcerated at FCI McDowell on false charges filed in an incident report. (*Id.* at 2). Taylor claimed to have submitted a grievance to the facility about his improper incarceration, but stated that he had not received any administrative assistance. Consequently, he filed the habeas petition. The habeas petition contained a long and convoluted story about Taylor's various arrests in Washington, D.C. for unknown crimes, about his arrests on state and federal charges arising in Maryland, about his court-ordered mental and physical examinations, and about his numerous transfers between prison facilities. (*Id.* at 4-7). Taylor described becoming sick at Clifton T. Perkins Hospital Center ("CTPHC") while in Maryland state custody, receiving very little care, and being moved from CTPHC to state correctional facilities without having his medical issues corrected. (*Id.* at 6-7). Taylor stated that he ultimately wound up in federal custody at USP Allenwood in Pennsylvania, where he was mistakenly detained. While there, Taylor filed a series of grievances and lawsuits, but subsequently learned that a "couple" of those had been "written off as 2255 motions," and the rest were simply left unresolved. (ECF No. 1 at 7-8). From USP Allenwood, Taylor was sent to FCC Butner in North Carolina, where he also filed a claim, and was later transferred to FCI McDowell.

2

### B. First Supplement

On February 12, 2014, Taylor supplemented his petition with supporting information. (ECF No. 3). Again, Taylor recounted an arrest in Washington, D.C., followed by detention, release, and a second arrest in Maryland on robbery and assault charges. (*Id.* at 2). He claimed to have been "forced into a mental hospital" and given an injection that made him ill. His state charges were dropped, but federal charges for the same alleged crimes were instituted. (*Id.*). Taylor also attached an electronic communication he sent while at FCI McDowell, asking for an immediate administrative transfer back to his residential state of Maryland. (*Id.* at 3).

### C. Second Supplement

On June 2, 2014, Taylor filed a second supplementation to his petition. (ECF No. 18). In this filing, Taylor requested "speedy disposition to the case(s) already in action for dismissal of charges & immediate release of prisoner from custody." (*Id.* at 1). Taylor argued that he had been "classified under false notions." (*Id.* at 2). He attached part of a docket sheet and a plea agreement from the federal criminal case that resulted in his incarceration at FCI McDowell. The documents reflected that Taylor had pled guilty and been convicted of four counts of Entering [a] Bank with Intent to Commit Larceny in the United States District Court for the District of Maryland (Greenbelt). Taylor was given a sentence of 63-months imprisonment on each count, to run concurrently, followed by three years of supervised release. (*Id.* at 4-12). Taylor explained that he had pled guilty to the charges in exchange for a four to ten month sentence. Nonetheless, he received the 63-month sentence due to an Obstruction of Justice enhancement that was added when he filed a motion after the plea agreement. (ECF No. 18 at 13-14). Taylor also complained that his property had

3

not been returned to him, that he had an untreated mental health condition, and that his punishment had been enhanced based on prior crimes for which he had been "railroaded." (*Id.* at 14). He claimed breach of agreement, illegal detainment, and "medical causality of emergency." (*Id.* at 15).

Also in this filing, Taylor once again discussed his arrests in Washington, D.C. and Maryland, his "detention" at CTPHC, his untreated illness caused by an injection received at CTPHC, his various transfers, and his other claims and lawsuits. Taylor indicated that he filed a petition while incarcerated at USP Allenwood, which was denied. After two years in Allenwood, he went to FCC Butner. (*Id.* at 23). From there, he was sent to a transfer facility in Oklahoma and was placed in the special housing unit ("SHU") after receiving an incident report for disruptive behavior. After forty days in the SHU, Taylor was sent to FCI McDowell where he was again placed in the SHU for disciplinary reasons. (*Id.* at 24). Taylor filed grievances regarding his placement in the SHU and was finally released to the general population thirty days later. Taylor also complained that he had filed numerous petitions seeking to amend incorrect information in his central file, with no response. (ECF No. 18 at 25-26). In particular, he challenged statements regarding his permanent residence address, his work history, and the nature of the charges against him. Taylor claimed in this submission that false charges had been filed against him, and the charges resulted an incorrect prison classification. He denied ever being violent, being a flight risk, or being a danger to the community. (*Id.* at 27). According to documents attached to Taylor's handwritten submission, his projected release date from FCI McDowell was January 29, 2015, and his full term expiration date was July 30, 2015. (*Id.* at 30).

4

### D. Third Supplement

On June 11, 2014, Taylor submitted additional information to be attached to his petition, and again requested immediate release. (ECF No. 19). This submission contained an electronic communication from Taylor to FCI McDowell's staff, asking if his central file had been corrected yet and seeking release from prison on his own recognizance. (*Id.* at 4). He also provided a copy of a grievance he submitted to the Warden, complaining that the facility was not properly making his installment payments to an unnamed court and demanding payment and receipts. (*Id.* at 5).

### E. Fourth Supplement

On June 23, 2014, Taylor made his last submission in support of his petition. (ECF No. 21). The multi-page document added nothing new to the prior filings; instead, it simply regurgitated the history previously provided by Taylor.[1] Taylor requested immediate release from custody and no probation. (*Id.* at 29).

### F. Response to Show Cause Order

Respondent filed a response to the show cause order on June 16, 2014, asking for a summary dismissal of Taylor's § 2241 petition. (ECF No. 20). Respondent argued that Taylor had failed to comply with Rule 8 of the Federal Rules of Civil Procedure by filing a petition that failed to state any discernible violation of federal law by the respondent. (Id. at 3-4). Respondent further contended that Taylor was subject to the three-strikes provision of 28 U.S.C. § 1915(g), and a search of nationwide PACER revealed that Taylor had filed over 20 civil actions, all with allegations similar to those asserted in the instant petition. According to Respondent, all of these claims had been

---

[1] Taylor did ask in this submission that the petition be amended to substitute the Warden of FCI McDowell as the respondent, a request that the undersigned now **GRANTS**.

dismissed, many as frivolous or for failure to state a claim, and at least one District Court has described Taylor's claims as "delusional." (*Id.* at 5). Lastly, Respondent asserted that Taylor's petition should be dismissed for his failure to exhaust administrative remedies. (*Id.* at 5-8). In support of his position, Respondent attached the affidavit of Sharon Wahl, a paralegal for the FCI Beckley Consolidated Legal Center, which oversees legal matters arising at FCI McDowell. (ECF No. 20-1). Ms. Wahl explained that Taylor was incarcerated at FCI McDowell on a bank larceny conviction and had a projected release date of January 29, 2015. In addition, Taylor was scheduled to begin Residential Reentry Center services on August 28, 2014. (*Id.* at 2). Ms. Wahl corroborated Respondent's statements that Taylor had filed numerous similar cases, all of which had been dismissed, and that he had failed to exhaust his administrative remedies at FCI McDowell. (*Id.* at 2-5). Respondent provided the Court with copies of orders reflecting the dismissals of some of Taylor's prior cases. (*Id.* at 12-27).

On September 19, 2014, Taylor submitted a change of address form, signaling his transfer to a Residential Reentry Center. (ECF No. 22). A recent check of the Bureau of Prisons inmate locater service revealed that Taylor had indeed been released from BOP custody on January 29, 2015.

II. **Discussion**

The undersigned agrees with Respondent that Taylor fails to state a discernible claim. Although the Clerk's office construed his initial handwritten submission as a petition for a writ of habeas corpus under § 2241, Taylor's subsequent filings reflected his intent to challenge the validity of his federal sentence, not its execution. In particular, Taylor complained about receiving a 63-month sentence of imprisonment instead of the four to ten month sentence he expected as part of his plea agreement.

6

Accordingly, his claims should have been asserted in a motion made pursuant to 28 U.S.C. § 2255 and filed in the sentencing court.[2] *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). While a rare exception exists to this general rule, Taylor makes no showing that would entitle him to use the savings clause exception. Furthermore, no basis to support such an exception is apparent in any of the materials that he submitted.

To the extent that Taylor challenged his prison classification, "such review is unavailable." (*See* ECF No. 20-1 at 26) (*citing* 18 U.S.C. § 3625). Furthermore, Taylor had no claim that an employee of a federal correctional center violated his constitutional rights by assigning him a particular classification, because he had "no legitimate statutory or constitutional entitlement [to a particular classification] sufficient to invoke due process." *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).

Many of Taylor's remaining allegations involve violations of his civil rights by prison facilities outside the Southern District of West Virginia. However, Taylor failed to name any individuals responsible for the purported violations and certainly has not identified any person within this Court's jurisdiction. Moreover, the materials provided by Respondent indicate that Taylor has made identical allegations in other courts, and his cases have been universally unsuccessful. Therefore, the undersigned **FINDS** that Taylor fails to state a viable claim in this Court.

In addition to his failure to state a tangible claim, Taylor's petition should be

---

[2] **While** this Court could construe the petition as a motion under § 2255 and transfer it, Taylor admits that he has already filed at least two such motions. There is no evidence that Taylor obtained permission to file a second or successive § 2255 motion; thus, dismissal of his petition is preferable to transferring it to a sentencing court that would have no jurisdiction to hear it. *United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) (hold that "[i]n the absence of pre-filing authorization, [a] district court lacks jurisdiction to consider an application containing abusive or repetitive claims.").

7

dismissed on the basis of mootness. Article III, Section 2 of the United States Constitution provides that federal courts may adjudicate only live cases or controversies. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); *Nakell v. Attorney General of North Carolina,* 15 F.3d 319, 322 (4th Cir.), *cert. denied,* 513 U.S. 866, 115 S.Ct. 184, 130 L.Ed.2d 118 (1994). This means that the "litigant must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." *Lewis,* 494 U.S. at 477 (citations omitted). In the context of a habeas corpus proceeding, the writ "does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 494-95, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973). Consequently, a prisoner must be in custody at the time he brings a petition for a writ of habeas corpus. *Leonard v. Hammond,* 804 F.2d 838, 842 (4th Cir. 1986). Although his subsequent release will not deprive the court of subject matter jurisdiction, "[t]he question of mootness is separate and distinct from the jurisdictional issue." *Id.*

"To be justiciable under Article III of the Constitution, a conflict between litigants must present a 'case or controversy' both at the time the action is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed,* 719 F.2d 689, 693-94 (4th Cir. 1983); *see also Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence") (citations omitted). "Simply

8

stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Therefore, when a prisoner files a habeas corpus petition seeking relief from a sentence, his release from custody may render his petition moot. *See Buczek v. Werlinger,* 513 F.App'x 126, 127-28 (3d Cir. 2013) (holding that a prisoner's release from prison prevented the court from fashioning "any form of meaningful relief"); *Watkins v. Garrett,* 514 F.App'x 443, 444 (5th Cir. 2013) (finding that no case or controversy existed in a habeas action where the petitioner was released from custody and did not seek a reduction of supervised release); *and Porter v. United States,* No.: 03-3043-13BD, 2004 WL 3899008 (D.S.C. May 28, 2004) (holding that satisfaction of the challenged sentence rendered a § 2241 petition moot). In this case, Taylor requested on multiple occasions that he be released from custody. He was released to a Residential Reentry Center in August 2014, and was discharged from custody in January 2015. According to the record Taylor supplied to the Court, his sentence expired on July 30, 2015. (ECF No. 18 at 30). As such, Taylor has already received the relief he requested.

There are two exceptions to the mootness doctrine. *Leonard,* 804 F.2d at 842. First, under the "collateral consequences" exception, a habeas petition is not rendered moot after a petitioner is released from custody where the conviction is challenged and the conviction results in collateral consequences that continue after expiration of the sentence. *Id.* (citing *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968)).

> An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole)

> constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction. Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole - - some "collateral consequence" of the conviction – must exist if the suit is to be maintained.

*Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998). For example:

> [w]here the criminal conviction ... results in the continued denial of important civil rights, such as the right-to-vote or the right to be considered for jury duty, the claim for habeas relief will remain a live controversy even after the prisoner has been released from custody. Similarly, where the criminal conviction may result in an enhanced sentence should the petitioner later be convicted of another crime, h[is] stake in habeas relief permits the court to exercise its judicial freedom long after [ ] he has been freed.

*Broughton v. State of N.C.,* 717 F.2d 147, 148-49 (4th Cir. 1983) (internal citations omitted). Second, the "capable of repetition, yet evading review" exception prevents a petition from becoming moot when two elements are present: (a) the challenged action is too short in duration to be fully litigated before it ceases or expires, and (b) there is a reasonable expectation that the same petitioner will be subjected to the same wrongful action again. *Leonard,* 804 F.2d at 842 (citing *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)).

In this case, neither exception applies. Taylor did not challenge his conviction or his term of supervised release; rather, he claimed that he was guaranteed a sentence of four to ten months imprisonment in exchange for his guilty plea, but he ended up receiving a 63-month sentence. Where the petitioner elects only to challenge his sentence and not the validity of his conviction, collateral consequences are irrelevant. Consequently, expiration of the term of his imprisonment moots the petition. *Lane v. Williams,* 455 U.S. 624, 631, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982). Similarly, the

10

capable of repetition, but evading review exception is inapplicable here, because there is no reasonable probability that Taylor will be returned to prison to serve time on a sentence that has already expired. Mere conjecture that Taylor could be returned to a federal correctional facility in the future and again face the same alleged wrong is not sufficient to meet the mootness exception. For these reasons, the undersigned **FINDS** that Taylor's request for relief is moot.

### III.    Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) be **DENIED,** and this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit

11

Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and Respondent.

**FILED**:  September 28, 2015

---
Cheryl A. Eifert
United States Magistrate Judge